UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY ROBERT THOMPSON,

       Plaintiff,                      CIVIL ACTION NO. 12-12493

   v.                                DISTRICT JUDGE DAVID M. LAWSON

                                        MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 13, 14)

Plaintiff Jeremy Robert Thompson challenges the Commissioner of Social Security's ("the Commissioner") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 13, 14). Judge David M. Lawson referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I.    RECOMMENDATION**

Because the Administrate Law Judge ("ALJ") did not provide a thorough explanation of whether Plaintiff's impairments meet or medically equal listings 12.02, 12.04 or 12.06, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, the Commissioner's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner for further proceedings.

## II.     REGULATORY FRAMEWORK AND STANDARD OF REVIEW

### *A.     Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v.*

-3-

*McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III. PROCEDURAL BACKGROUND

#### A. *Administrative Proceedings*

Plaintiff applied for supplemental security disability income ("SSD") and disability insurance benefits on August 3, 2009, alleging he became disabled on October 1, 1998 (Tr. 11). He later withdrew his SSD claim and amended his disability onset date to July 27, 2009 (Tr. 25-26). After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a video hearing before ALJ Mary Ann Poulose, who considered the case *de novo*.[1] In a written decision, the ALJ found Plaintiff was not disabled (Tr. 11-18). Plaintiff requested an Appeals Council review (Tr. 7). On April 26, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

#### B. *ALJ Findings*

---

[1] Plaintiff is no longer represented by counsel.

-4-

Plaintiff has a ninth-grade education and past relevant work as a CNC operator,[2] parts cleaner, roof helper, furniture deliverer and salesperson (Tr. 17, 26). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since his amended disability onset date in July of 2009 (Tr. 13).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: bipolar disorder and alcohol dependence (Tr. 13).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 14).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform "a full range of work at all exertional levels but [required] . . . occasional co-worker interaction and no interaction with the public" (Tr. 15).

At step four, the ALJ found that Plaintiff could perform his past relevant work as a CNC operator, parts cleaner and roof helper (Tr. 17). Accordingly, the ALJ found Plaintiff was not disabled.

IV.   **TESTIMONY AND MEDICAL EVIDENCE**

    1.   **Plaintiff's Hearing Testimony and Statements**

Plaintiff testified that he stopped working in November of 2009. He left Texas where his job was located because being in the same work environment every day with the same people "got to [him]." But, he did not have any trouble performing the physical demands of the work (Tr. 27-28).

---

[2]"A CNC (computer numerical control) operator is someone who operates a CNC machine. The CNC machine can perform functions, such as precision drilling and tapping, cutting and shaping steel and aluminum, or milling flat stock into intricate designs." *See* http://www.wisegeek.org/what-is-a-cnc-operator.htm (last visited June 3, 2013).

-5-

According to Plaintiff, he hears voices and experiences bouts of stress, depression, anxiety, paranoia (he fears crowded places, sometimes fears going outside, and thinks people are trying to harm him), and social isolation (Tr. 33, 35). In 2009, he saw a psychiatrist once a month for five to six months and a therapist once (Tr. 32-33). Plaintiff testified that he does not get out of the bed three or four days a week (Tr. 36). He stopped drinking liquor in 2008 and limits his alcohol consumption to five beers every two months (Tr. 34-35).

Plaintiff testified that he can take care of his personal needs; help around the house; wash dishes; occasionally sweep and vacuum; take out the trash; cut the grass; shovel the snow; fix sandwiches and microwave meals; occasionally go grocery shopping; visit his mother once a month; walk his girlfriend's minor children to school once or twice a week, help them with homework, and pick them up from school when his girlfriend is at work (Tr. 29-31).

## 2. Relevant Medical Evidence[3]

On July 10, 2008, Plaintiff had suicidal thoughts and feelings of helplessness (Tr. 193). Three months later, Plaintiff sought treatment for depression and anxiety at Detroit Central City (Tr. 197). Plaintiff suffered from poor impulse control, guarded behavior, fair insight, verbal and physical aggression, agitation, anxiety, depressed mood (approximately six days per week for 10 years), decreased energy, paranoia (recurrent thoughts about people trying to hurt him), trouble sleeping, anhedonia, hopelessness, worthlessness, insomnia, and recurrent thoughts of dying and committing homicide (Tr. 197-198, 203). Plaintiff denied mood swings, hallucinations (although, he had moderate mental confusion and delusional thinking) and any suicidal plan or

---

[3]Plaintiff also attached documents that were not part of the administrative record: (1) a letter from Jennifer Fretz, D.O. dated March 11, 2010 that says Plaintiff "is unable to function productively in society in his current mental state"; and (2) a prescription from Dr. Fretz that says Plaintiff "is currently being treated for major depression [and] possible bipolar." This Magistrate Judge need not consider this evidence to conclude that remand is proper.

-6-

intent (although, he had suicidal ideation) (Tr. 197, 200, 208). Based on Plaintiff's symptoms, Andrea Bell, LLMSW determined that Plaintiff was moderately impaired in his ability to maintain an intimate relationship and good eating habits. She also found that he was markedly impaired in his ability to concentrate; control his temper; and maintain a job, friendships, hobbies, and good sleeping habits (Tr. 199). Ms. Bell diagnosed Plaintiff with major depressive disorder and assessed a GAF score of 40 (Tr. 203).[4] However, Plaintiff reported planning to return to work (Tr. 201).

On March 6, 2009, Plaintiff complained of trouble sleeping, pressure in his head, chest pain with anxiety, depression, anxiousness, suicidal thoughts, short-term memory loss, paranoia (thoughts of being watched), and racing thoughts (Tr. 216). Jennifer Fretz, D.O. diagnosed Plaintiff with major depressive disorder and possible bipolar disorder (Tr. 217).

In June of 2009, Plaintiff experienced hallucinations, pressure in his head, and stress. Dr. Fretz diagnosed Plaintiff with possible bipolar disorder (Tr. 215).

---

[4]The GAF score is

> a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 502 fn. 7 (6th Cir. 2006).

-7-

Plaintiff had a panic attack on July 16, 2009. The following day, he reported pressure in his head with stress, trouble sleeping and anxiousness. Dr. Fretz again diagnosed Plaintiff with major depressive disorder and possible bipolar disorder (Tr. 214).

On July 28, 2009, Plaintiff complained of: (1) impaired judgment; (2) bizarre and aggressive behavior; (3) homicidal and suicidal ideation; (4) auditory hallucinations; (5) agitation; (6) thoughts of death; (7) anxiousness; (8) delusional thoughts; (9) psychotic feelings; (10) depression; (11) mood swings; (12) anxiety; and (13) paranoia (Tr. 222-223, 225-226). Plaintiff was diagnosed with acute depressive episode and bipolar disorder psychosis (Tr. 224). It was noted that Plaintiff has a history of cutting his wrists and overdosing on sleeping pills (Tr. 226). Plaintiff reported an adequate appetite and sleep pattern (Tr. 226).

On July 29, 2009, Plaintiff reported: (1) feelings of paranoia; (2) obsessive thoughts; (3) auditory hallucinations; (4) anxiousness; (5) suicidal, homicidal and delusional thoughts; (6) insomnia; (7) stress; (8) depression; (9) racing thoughts; (10) agitation; (11) panic attacks; (12) severe mood swings; and (13) bizarre and aggressive behavior (Tr. 234, 236). Surjit S. Mahal, M.D. concluded that Plaintiff was paranoid, delusional, out of touch with reality, had severe psychomotor agitation, and impaired judgment (Tr. 234). His attention and concentration were also impaired (Tr. 236). However, Plaintiff's memory was grossly intact. Dr. Mahal diagnosed Plaintiff with panic disorder and bipolar disorder with psychotic features (Tr. 234-235). His GAF score was either 13 or 15 (Tr. 235, 238).

On August 6, 2009, Plaintiff reported: (1) hyperactivity; (2) restlessness; (3) depression; (4) anxiety; (5) panic attacks; (6) mood swings; (7) obsessive-compulsive disorder (OCD); (8) delusional thinking; (9) auditory hallucinations; (10) paranoia; (11) dissociation; (12) social withdrawal; (13) stress; (14) short-term memory loss; and (15) recurring thoughts of death, murder and rape (Tr. 305). He indicated that he got along well with his family and peers (Tr.

308). Marjorie Russo, LLMSW diagnosed Plaintiff with bipolar disorder and assessed a GAF score of 30 (Tr. 317).

On September 9, 2009, Plaintiff complained of depression, anxiety, anxiousness, decreased energy, and trouble sleeping; he denied suicidal and homicidal ideations (Tr. 295, 299, 301). It was noted that Plaintiff has a history of "vague" auditory hallucinations (Tr. 295). John Gherman, M.D. diagnosed Plaintiff with intermittent explosive disorder,[5] personality disorder and bipolar disorder; his GAF score was 55 (Tr. 291, 300).

A progress note dated October 14, 2009 indicated Plaintiff has a history of anxiety and depression: he lost interest in activities and did not like to leave the house (Tr. 292). Plaintiff indicated that he did not want to work, and that he applied for disability (Tr. 293).

On November 20, 2009, Plaintiff reported: (1) low self esteem; (2) feelings that he is helpless, hopeless and useless; (3) depression (for eight years); (4) social isolation and withdrawal; (5) stress; (6) anxiety; (7) racing thoughts; (8) trouble sleeping; (9) decreased appetite; (10) auditory hallucinations; (11) hearing voices in his left ear; and (12) mood swings (for eight years) (Tr. 248-249). Plaintiff denied having panic attacks, paranoid ideations, and delusional thinking. In addition, he indicated that he got along "fairly well" with others, and was in touch with reality (Tr. 248-249). Plaintiff could focus; concentrate; and understand, remember and follow directions (Tr. 250). Basivi Baddigam, M.D. noted that Plaintiff "never had any paranoid ideations or delusional thinking. [Plaintiff] doesn't appear to have had any hallucinations with the information he is providing [and] he is vague in giving details of

---

[5]"Intermittent explosive disorder involves repeated episodes of impulsive, aggressive, violent behavior or angry verbal outbursts in which you react grossly out of proportion to the situation." *See* http://www.mayoclinc.com/health/intermittent-explosive-disorder/DS00730 (last visited June 5, 2013).

-9-

hypomania" (Tr. 249). Dr. Baddigam diagnosed Plaintiff with dysthymic disorder,[6] anxiety disorder; his GAF score was 55 (Tr. 250).

James Tripp, ED.D. completed a mental RFC on December 11, 2009. Plaintiff was moderately limited in his ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) interact appropriately with the general public; (4) respond appropriately to changes in the work setting; (5) maintain social functioning; and (6) maintain concentration, persistence or pace (Tr. 266-267, 280). Plaintiff was mildly limited in his ability to perform activities of daily living (Tr. 280). He had one or two episodes of decompensation, each of extended duration (Tr. 280). Plaintiff could get along with others, but did not like people in authority (Tr. 282). Dr. Tripp determined that despite Plaintiff's major depression and anxiety disorder, he could perform simple, sustained and unskilled tasks (Tr. 268, 273, 275).

Pretecia Collins completed a case analysis on December 14, 2009 and concluded Plaintiff had the mental capacity to perform his past work as a roof helper (Tr. 284).

On January 25, 2010, Plaintiff reported panic attacks, auditory hallucinations, anxiety and paranoia; he was afraid to go outside. Plaintiff denied suicidal and homicidal ideations. Dr. Gherman diagnosed Plaintiff with intermittent explosive disorder and bipolar disorder (Tr. 290-291).

---

[6]Dysthymic disorder is a "chronic (unipolar) depression whose symptoms are less severe than those in Major Depressive Disorder." See http://www.mentalhealth.com/dis/p20-md04.html (last visited June 5, 2013).

-10-

In March of 2010, Dr. Gherman described Plaintiff's auditory hallucinations as "vague."[7] Plaintiff also indicated that medication was helping his anxiety; he was not as depressed and much calmer (Tr. 287).

### 3. Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education and past work experience. The individual could not have any interaction with the public and only occasionally interact with co-workers (Tr. 39). The VE testified that such an individual could perform Plaintiff's past relevant work as a CNC operator, parts cleaner and roof helper (Tr. 39). He could also perform work as a janitor, laundry worker and store laborer (Tr. 40).

## V. THE LISTINGS

Plaintiff argues that the ALJ erred at step three of the disability analysis by failing to find his impairments satisfy listing 12.02, listing 12.04, or listing 12.06.

### A. Listing 12.02 - Organic Mental Disorders

To meet or equal the requirements of listing 12.02, Plaintiff's impairments must satisfy the "A" and "B" criteria, *or* the "C" criteria.

#### 1. "A" and "B" Criteria

The "A" criteria for listing 12.02 requires that Plaintiff have medically documented persistence of one of the following: (1) disorientation to time and place; (2) short-term, intermediate or long-term memory impairment; (3) hallucinations or delusions; (4) change in personality; (5) disturbance in mood; (6) emotional lability (e.g., explosive temper outbursts or

---

[7]While his hallucinations were described as "vague," Dr. Gherman prescribed medication for Plaintiff's auditory hallucinations (Tr. 288).

sudden crying) and impairment in impulse control; or (7) loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range.

To satisfy the "B" criteria, Plaintiff's mental problems (i.e., the "A" criteria) must result in at least two of the following: (1) marked restriction of activities of daily living;[8] (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration (i.e., three episodes within one year, or an average of once every four months, each lasting for at least two weeks").

### 2. "C" Criteria

As to listing 12.02, the "C" criteria requires a medically documented history of a mental disorder (at least two years in duration) that has more than minimally limited Plaintiff's ability to do basic work activities *and* one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that results in decompensation with even a minimal increase in mental demands or change in the environment; or (3) current history of at least one year of inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

---

[8]Marked "means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R., pt. 404, subpart P, App. 1.

    **B.**    **Listing 12.04 - Affective Disorders**

To meet or equal the requirements of listing 12.04, Plaintiff's impairments must similarly satisfy the "A" and "B" criteria, *or* the "C" criteria.

    **1.**    **"A" and "B" Criteria**

The "A" criteria for listing 12.04 requires that Plaintiff have medically documented persistence of one of the following:

(1)    Depressive syndrome characterized by at least four of the following

    (a)    anhendonia or pervasive loss of interest in almost all activities;

    (b)    appetite disturbance with change in weight;

    (c)    sleep disturbance;

    (d)    psychomotor agitation or retardation;

    (e)    decreased energy;

    (f)    feelings of guilt or worthlessness;

    (g)    difficulty concentrating or thinking;

    (h)    thoughts of suicide; or

    (i)    hallucinations, delusions or paranoid thinking;

OR

(2)    Manic syndrome characterized by at least three of the following:

    (a)    hyperactivity;

    (b)    pressure of speech;

    (c)    flight of ideas;

    (d)    inflated self-esteem;

    (e)    decreased need for sleep;

    (f)    easy distractibility;

      (g)      involvement in activities that have a high probability of painful consequences which are not recognized; or

      (h)      hallucinations, delusions or paranoid thinking;

OR

(3)      Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

To satisfy the "B" criteria, Plaintiff's mental problems (i.e., the "A" criteria) must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

### 2. "C" Criteria

As to listing 12.04, the "C" criteria requires a medically documented history of an affective disorder (at least two years in duration) that has more than minimally limited Plaintiff's ability to do basic work activities *and* one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that results in decompensation with even a minimal increase in mental demands or change in the environment; or (3) current history of at least one year of inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

### C. Listing 12.06 - Anxiety-Related Disorders

To meet or equal the requirements of listing 12.06, Plaintiff's impairments must satisfy the "A" and "B" criteria, *or* the "A" and "C" criteria.

### 1. "A" Criteria

The "A" criteria for listing 12.06 requires that Plaintiff have medically documented findings of one of the following:

(1) Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

    (a) motor tension;

    (b) autonomic hyperactivity;

    (c) apprehensive expectation; or

    (d) vigilance and scanning;

OR

(2) A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation;

OR

(3) Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week;

OR

(4) Recurrent obsessions or compulsions which are a source of marked distress;

OR

(5) Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

### 2. "B" Criteria

To satisfy the "B" criteria, Plaintiff's anxiety (i.e., the "A" criteria) must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

### 3. "C" Criteria

As to listing 12.06, the "C" criteria requires the complete inability to function independently outside the area of Plaintiff's home.

## VI. ANALYSIS OF THE ALJ'S DECISION REGARDING THE LISTINGS

In determining whether Plaintiff's impairments met or medically equaled the listings, the ALJ stated:

> [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.
>
> In activities of daily living, [Plaintiff] has mild restrictions. During the hearing, [Plaintiff] testified he has good and bad days. On average, he estimated he has 3-4 bad days a week, wherein, he sleeps all day. However, [Plaintiff] testified he can cook microwavable meals, wash dishes, occasionally sweep, take[] out the trash, occasionally shop, and care for his girlfriend's minor children. Taken together, the undersigned finds [Plaintiff] experiences mild limitations in this domain.
>
> In social functioning, [Plaintiff] has moderate difficulties. [Plaintiff] testified he experiences paranoia, and he fears going either outside, or to crowded places. Given [Plaintiff's] hearing testimony, the undersigned finds [Plaintiff] experiences moderate limitations in his ability to function socially.
>
> With regard to concentration, persistence or pace, [Plaintiff] has mild difficulties. According to the findings of a November 20, 2009 consultative psychological examination, [Plaintiff] could repeat 4/4 numbers forward and backward, and recall 2/3 objects after [five] minutes. The examination also indicted [Plaintiff] had normal psychomotor activity and that he could perform simple calculations. Based on these findings, the undersigned finds [Plaintiff] experiences mild limitations in his ability to maintain concentration, persistence, or pace.
>
> As for episodes of decompensation, [Plaintiff] has experienced no episodes of decompensation, which have been of extended duration.
>
> Because [Plaintiff's] mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The medical evidence of record does not contain instances of repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in marginal adjustment such that a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or, a history of an inability to function outside of a highly supportive living arrangement.

(Tr. 14-15). This Magistrate Judge finds the ALJ erred in her analysis. First, the ALJ stated Plaintiff "has experienced *no* episodes of decompensation, which have been of extended duration" (Tr. 14) (emphasis added). But, on December 11, 2009, Dr. Tripp indicated that Plaintiff had *one or two episodes* of decompensation, each of extended duration (Tr. 280).[9]

Second, the ALJ determined Plaintiff had *mild* limitations in his ability to maintain concentration, persistence or pace (Tr. 14). But she did not consider Ms. Bell's conclusion that Plaintiff was *markedly* limited in his ability to concentrate (Tr. 199).

While the ALJ need not discuss every piece of evidence in the administrative record, *See Kornecky*, 167 F. App'x at 508, this Magistrate Judge finds she must consider evidence that directly relates to whether Plaintiff's impairments satisfy a listing and provide a thorough analysis of the listings. *See Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328 at **6-7 (E.D. Mich. June 18, 2012) (finding it was impossible to determine whether substantial evidence existed to support the ALJ's third step evaluation, because the ALJ did not discuss the applicable listing). For example, Plaintiff may satisfy the "B" criteria of listings 12.02, 12.04 and 12.06 *if* he demonstrates marked difficulties in maintaining: (1) social functioning; and (2) concentration, persistence, or pace. There is evidence – which the ALJ

---

[9]This error does not change the ALJ's decision that Plaintiff's impairments do not satisfy the "B" criteria of the listings. The regulations require *three* episodes of decompensation within one year, or an average of once every four months. 20 C.F.R., pt. 404, subpt. P, App. 1.

disregarded – that Plaintiff satisfies this requirement: Ms. Bell found Plaintiff was markedly limited in his ability to concentrate[10] and in his ability to maintain friendships (Tr. 199).[11] While Ms. Bell did not specifically find that Plaintiff was markedly limited in his ability to maintain social functioning, the definition of social functioning refers to an individual's ability to "get along with others, such as family members, *friends*, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R., pt. 404, subpt. P, App. 1 (emphasis added).[12] And, Plaintiff's impairments need not meet the listings – if they *medically equal* the listings. *See* 20 C.F.R. 404.1520(d). Further, the regulations indicate that an individual can demonstrate impaired social functioning by proof of social isolation. 20 C.F.R., pt. 404, subpt. P, App. 1. The ALJ did not consider Plaintiff's reports of social isolation.

In sum, this case should be remanded to the ALJ to consider whether Plaintiff's impairments satisfy the "B" criteria of the listings. If Plaintiff's impairments satisfy the "B" criteria, he would be disabled under listings 12.04 and 12.06, because the Commissioner concedes Plaintiff satisfies the "A" criteria under those listings (Dkt. No. 14 at pgs. 9 n. 4, 17 CM/ECF).

Plaintiff's impairments may also satisfy the "A" criteria of listing 12.02. In turn, if Plaintiff's impairments satisfy the "B" criteria, he could also be rendered disabled under listing

---

[10]Dr. Tripp also found Plaintiff was moderately – as opposed to mildly – limited in his ability to maintain concentration, persistence, or pace (Tr. 280).

[11]While this finding was made in 2008 – before Plaintiff's amended disability onset date of July 27, 2009 – the Court may consider it, because it sheds light on Plaintiff's alleged disabling conditions. *See Burnett v. Astrue*, No. 10-14739, 2012 WL 3870368 at *1 (E.D. Mich. July 9, 2012).

[12]Plaintiff also had low GAF scores – ranging from 13-55 – which could mean impairment in work or school, family relations, judgment, thinking or mood (Tr. 203, 235, 238, 291, 300, 317).

-18-

12.02. There is evidence that Plaintiff persistently had: (1) short-term memory impairment (Tr. 216, 236, 305); (2) hallucinations or delusions (Tr. 208, 215, 223, 226, 234, 290, 305); and (3) mood swings (Tr. 234, 248, 305).

### VII.   CONCLUSION

Because the ALJ did not provide a thorough explanation of whether Plaintiff's impairments meet or medically equal listings 12.02, 12.04 or 12.06, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, the Commissioner's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. §405(g). On remand, the ALJ should cite the medical evidence and Plaintiff's testimony and provide a thorough analysis of whether Plaintiff's impairments meet or medically equal listings 12.02, 12.04 or 12.06.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due

within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  See E.D. Mich. LR 72.1(d)(3), (4).

                                        s/Mark A. Randon
                                        Mark A. Randon
                                        United States Magistrate Judge

Dated:  June 10, 2013

*Certificate of Service*

    *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 10, 2013, by electronic and/or ordinary mail.*

                                        *s/Eddrey Butts*
                                        *Case Manager for Magistrate Judge Randon*